UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ANNE WHITE HAT, RAMON MEJIA, KAREN SAVAGE, SHARON LAVIGNE, HARRY JOSEPH, KATHERINE AASLESTAD, PETER AASLESTAD, THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS, and LOUISIANA BUCKET BRIGADE, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> JEFF LANDRY, in his official capacity as Attorney General of Louisiana, BO DUHE, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office; RONALD J. THERIOT, in his official capacity as Sheriff of St. Martin Parish, <br><br> *Defendants.* | CIVIL ACTION <br><br> NO. 19-CV-00322 <br><br> JUDGE JOHN W. deGRAVELLES <br><br> MAGISTRATE JUDGE ERIN WILDER-DOOMES |

**MEMORANDUM IN SUPPORT OF ATTORNEY GENERAL JEFF LANDRY'S
MOTION TO DISMISS**

This is a constitutional challenge to parts of a Louisiana statute, La. R.S. 14:61, as amended by 2018 H.B. 727, that forbids unauthorized entry of a critical infrastructure. The suit arises from protests targeting the construction of an oil pipeline in St. Martin Parish, in the Western District of Louisiana. Three individuals were arrested for violating La. R.S. 14:61 after they refused to leave the pipeline construction site. Those three individuals, joined by fractional co-owners of the servient estate and various activists seek to have part of La. R.S. 14:61 declared unconstitutional. Attorney General Landry moves to dismiss on the basis of lack of subject matter jurisdiction, including due to sovereign immunity and lack of standing; improper venue; and failure to state a claim.

1

## BACKGROUND

### THE EXPROPRIATION ACTION

Along with numerous other individuals, Plaintiffs Katherine Aaslestad, Peter Aaslestad, Theda Larson Wright, Alberta Larson Stevens, and Judith Larson Hernandez (collectively, the "Fractional Co-Owners") own interests in a 38 acre tract of land located in St. Martin Parish (the "Property"). Compl. ¶¶ 23, 66, 67. Seeking to construct a pipeline, Bayou Bridge Pipeline ("BBP") obtained rights of way from hundreds of co-owners of the 38 acre tract, but other co-owners were either not located or refused to grant rights of way. Exh. 1 at 1-2.[1]; *see also* Compl. ¶ 71. Plaintiffs Peter Aaslestad, Katherine Aaslestad, and Theda Wright — with respective interests of 0.0005803, 0.0005803, and 0.0000994 in the tract — were among the co-owners who refused to grant a right of way to BPP. Exh. 1 at 1-2, 6-7.

BPP recorded the rights of way it obtained, *see, e.g.*, Exh. 3[2], and filed a state court action for expropriation against the remaining co-owners on July 27, 2018, Exh 1 at 2. Peter Aaslestad, Katherine Aaslestad, and Theda Wright then filed claims in reconvention for violations of constitutional rights, trespass, and property damage. *Id.* at 1. After a trial, the state court found that the maximum just compensation due to Peter Aaslestad was $6.64, to Katherine Aaslestad was $6.64, and to Theda Wright was $0.91. Exh. 1 at 9. Based on BBP's previous tender, the court awarded them just

---

[1] The Complaint makes extensive reference to the expropriation proceeding and the resulting judgment. *E.g.*, Compl. ¶¶ 12, 82-83. At least the judgment in that proceeding is incorporated by reference in Plaintiffs' Complaint and, in any event, is subject to judicial notice. *See, e.g.*, *Alaska Ele. Pension Fund v. Asar*, 2019 U.S. App. LEXIS 10637, at *13 (5th Cir. Apr. 10, 2019) ("[W]e may look to publically filed SEC documents implicitly incorporated into a complaint."); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("We note approvingly, however, that various other circuits have specifically allowed that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")

[2] In a separate trespass action filed by Plaintiff Peter Aaselstadt against BPP, he alleged that this conveyance, recorded on December 12, 2017, reflected an interest in the Property. Verified Pet. ¶ 12 & Exh. B, *Aaslestad v. Bayou Bridge Pipeline, LLC*, No. 87010 (La. 16th JDC).

compensation of $75 each. *Id.* The court then found that an additional award of $75 each was just damages for BPP's trespass prior to the final expropriation. *Id.* at 11; *see also* Compl. ¶ 83 ("nominal damages"). The state court entered its reasons for judgment on December 6, 2018, and a final judgment incorporating those reasons on December 18, 2018. Exhs. 1, 2 at 2-3; *see also* Compl. ¶ 83. The judgment provided, among other things, that

> Defendants, Absentee Defendants, and Default Defendants reserve the right to cultivate or otherwise make use of the Property for other purposes in a manner that will not interfere with the enjoyment or use of the servitude rights and the rights of way granted to [BBP].

Exh 2 at 5.

## THE ARRESTS

At some point prior to filing the expropriation action, BPP entered the Property and began constructing its pipeline. Compl. ¶ 72. Thereafter, on August 18, 2018, Plaintiffs Mejia and Savage were arrested on the Property and accused of violating La. R.S. 14:61. Compl. ¶¶ 20-21. Plaintiffs White Hat and Savage were later arrested pursuant to warrants for violation of R.S. 14:61 based on their presence on the Property. Compl. ¶¶ 19, 21, 75, 87-89; *see also* Exhs. 4-5. All four arrests were tied to the arrestee's presence on part of the Property that was the subject recorded right of way agreements in favor of BPP, and which was subsequently expropriated for the BPP pipeline right of way. Compl. ¶¶ 88-91.

Plaintiffs allege that Mejia, Whitehat, and Savage (collectively, the "Arrestee Plaintiffs") were present on the Property with the permission of certain co-owners. Compl. ¶¶ 19-21. However, another co-owner of the Property had authorized BBP to contact law enforcement on his behalf for the removal of trespassers. Exh. 10. Only five of the over 400 co-owners of the Property are Plaintiffs in this lawsuit.

3

## **LEGAL STANDARDS**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* Fed. R. Civ. P. 12(b)(1). A federal court lacks subject matter jurisdiction over an action barred by sovereign immunity. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Similarly, if a party lacks standing to bring its claims, a federal court has no subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The party seeking to establish subject-matter jurisdiction bears the burden of demonstrating its existence. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Jurisdictional disputes must be resolved before other Rule 12 motions, and may require resolution of disputed facts. *Id.*

Only after determining that it has subject matter jurisdiction can a court resolve questions of venue. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Once a defendant raises an objection to venue, the plaintiff bears the burden of demonstrating that venue is proper. *See Perez v. Pan Am. Life Ins. Co.*, 1995 U.S. App. LEXIS 41289, at *6 (5th Cir. Oct. 20, 1995) (unpublished table decision). In resolving questions of venue, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint." *Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 238 (5th Cir. 2009).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

4

Significantly, "[j]urisdictional allegations are . . . subject to the same plausibility requirement that applies to allegations of a claim for relief under the *Twombly/Iqbal* line of authority." 2 Moore's Federal Practice – Civil § 12.30 (2018) (gathering cases from eight circuits); *see also Lujan*, 504 U.S. at 561. In determining whether a plaintiff has stated a claim, a court must consider "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## ARGUMENT

**I.  THE ATTORNEY GENERAL WAS IMPROPERLY JOINED, SUCH THAT VENUE DOES NOT LIE IN THE MIDDLE DISTRICT.**

   **A.  Plaintiffs claims against Attorney General Landry are barred by sovereign immunity.**

Attorney General Landry is named as a defendant only in his official capacity. Compl. ¶ 30. Such "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[I]t is no different from a suit against the State itself," *id.*, and is thus barred by sovereign immunity. Louisiana has not waived its sovereign immunity, and the State's immunity was not abrogated by Section 1983. *Champagne,* 188 F.3d at 314.[3]

Plaintiffs thus implicitly invoke the exception set forth in *Ex Parte Young*, 209 U.S. 123, 155-56 (1908), which permits a federal court to provide prospective injunctive relief against state officials. That exception applies only to officials who have "some connection" with enforcement of the challenged statute. *Id.* at 157. An official's general obligation to execute the State's laws or represent

---

[3] "Plaintiffs also cite 42 U.S.C. 1988 as a jurisdictional basis. Compl. ¶16. But "Section 1988 . . . does not create an independent federal cause of action[.]" *Sarmiento v. Tex. Bd. of Veterinary Med. Exam'rs*, 939 F.2d 1242, 1245 n.4 (5th Cir. 1991), *superseded by statute on other grounds as recognized in Robinson v. Johnson*, 975 F. Supp. 950, 954 n.5 (S.D. Tex. 1996).

5

the State in litigation is not enough to trigger the exception. *Id.* at 157. A court must therefore look to the official's specific duties under state law. *Id.* at 160-61.[4]

Plaintiffs plead no specific acts by Attorney General Landry, but point to Article 62 of the Louisiana Code of Criminal Procedure as providing the Attorney General with authority to "exercise[] supervision over all district attorneys in the state" and "institute a prosecution . . . for the assertion or protection of the rights and interests of the State." Compl. ¶ 30. Plaintiffs ignore the *constitutional* limitations on that statutory provision. *See Kemp v. Stanley*, 204 La. 110 (1943). The Louisiana Constitution provides that "a district attorney . . . shall have charge of every criminal prosecution by the state in his district . . . ." La. Const. art. V Section 26(B). In contrast, the Attorney General's authority "to institute, prosecute, or intervene in any criminal action" can be exercised only "for cause, when authorized by the court which would have original jurisdiction" over the prosecution. La. Const. art. IV Section 8.[5]

---

[4] A plurality of the en banc Fifth Circuit held that the *Ex Parte Young* exception requires a "close" or "special relation" to enforcement of the challenged statute. *Okpalobi v. Foster*, 244 F.3d 405, 413 (5th Cir. 2001) (quoting *Fitts v. McGee*, 172 U.S. 516, 529 (1899)). The same plurality also held that the exception "only applies when the named defendant state officials . . . threaten and are about to commence proceedings to enforce" the challenged statute. *Id.* at 416. A subsequent panel noted that, as a plurality opinion, the portion of *Okpalobi* that addresses the scope of *Ex Parte Young* is not binding precedent. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). That panel declined to "resolve whether *Ex Parte Young* requires only 'some connection' or a special relationship' between the state actor and the challenged statute." *Id.* Another panel similarly declined to resolve "whether *Ex Parte Young* applies only when there is a threatened or actual proceeding to enforce the challenged state law." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017). Under the limitations set forth in *Okpalobi*, Attorney General Landry is even more clearly not a proper defendant.

[5] In *Kemp v. Stanley*, 204 La. 110 (1943), the Louisiana Supreme Court construed essentially identical provisions in Article VII Section 56 of the Louisiana Constitution of 1921. Exhs. 6-8. In that case, the Attorney General contended he had the power to supersede a district attorney in a criminal proceeding and that, by statute, the exercise of his discretion in doing so could not be inquired into by the courts. 204 La. at 118-19. The Louisiana Supreme Court disagreed, holding that the Attorney General could not arbitrarily supersede a district attorney. *Id.* at 121. Rather, for the Attorney General to do so, there must be evidence in the record "to show that the District Attorney has failed or neglected or will fail or neglect to perform the duties imposed upon him by law or . . . fail to assert and protect the rights and interests of the State." *Id.* The Court reached that conclusion despite the absence of the "for cause" limitation found in the current Louisiana Constitution.

Plaintiffs do not plead any facts suggesting good cause for the Attorney General institute a prosecution against them, or that he has been authorized to do so by any court. *See also* Landry Dec. ¶¶ 4-6. Certainly in the absence of such allegations, and because the Louisiana Constitution makes "any involvement the Attorney General might have in prosecuting cases under the statute . . . indirect and remote," Attorney General Landry is entitled as a matter of law to be dismissed as a party-defendant. *Doe v. Jindal*, No. 11-554-BAJ-SCR, 2011 U.S. Dist. LEXIS 93094, at *8 (M.D. La. Aug. 19, 2011) (quoting *Entm't Software Ass'n v. Foti*, 451 F. Supp. 2d 823, 828 (M.D. La. 2006)).

  **B.**  **Venue does not lie in the Middle District.**

Plaintiffs allege that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this district. Compl. ¶ 18. But Attorney General Landry is the only Defendant that even arguably resides in this district, and even that is only in his official capacity. Landry Decl. ¶ 3; *see also* Duhe Decl. ¶¶ 2-4; Theriot Decl. ¶¶ 2-3. If Attorney General Landry is dismissed, Section 1391(b)(1) can no longer support venue. *See, e.g.*, *Leroy*, 443 U.S. at 179; *Perez*, 1995 U.S. App. LEXIS 41289 at *7 (noting impact of dismissal of one defendant on venue).

Plaintiffs also allege that "[v]enue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district." Compl. ¶ 18. But the complained of events are arrests occurring in St. Martin Parish based on certain Plaintiffs' presence on the Property, which is also in St. Martin Parish. Compl. ¶¶ 19, 21, 23-25, 66-69, 75, 77. Some of the other Plaintiffs have expressed concern about the possibility of future events affecting them in St. James Parish or Orleans Parish. Compl. ¶ 22, 26-29. St. Martin Parish is located in the Western District, and—assuming *arguendo* that speculative future events by unjoined law enforcement agencies are relevant to venue—St. James and Orleans Parishes are located in the Eastern District. None of the complained of events (or even speculative events) occurred in the Middle District. Venue in the Middle District is therefore not proper under Section 1391(b)(2).

7

## II. THE COURT LACKS SUBJECT MATTER JURISDICTION

### A. The Court must evaluate each Plaintiff's standing for each claim.

Article III establishes an "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560-61. Because "standing is not dispensed in gross," "[t]he court must evaluate each plaintiff's Article III standing for each claim." *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015); *see also Nat'l Fed'n of the Blind v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011). Thus, for each claim, each Plaintiff must plausibly allege that (1) he has suffered an "injury in fact" which is "an invasion of a legally protected interest" that is "concrete and particularized" rather than "conjectural or hypothetical," (2) there is a "causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) the likely injury will "be redressed by a favorable decision." *Id.* Where, as here, the plaintiffs seek injunctive relief, they must show "there is a real and immediate threat of repeated injury," i.e., a "real or immediate threat that [they] will be wronged again." *City of L.A. v. Lyons*, 461 U.S. 95, 102, 111 (1983). Past injury is not enough. *Id.* at 102.

### B. None of the Plaintiffs Have "Chill" Standing

Plaintiffs' principal basis for standing is via allegations that their First Amendment rights have been chilled by portions of R.S. 14:61. Compl. ¶ 28, 29, 108, 121. But Plaintiffs' naked assertions of "chill" are insufficient to establish an injury in fact. *Younger v. Harris*, 401 U.S. 37, 42 (1971); *see also, e.g.*, *Morrison v. Bd. of Educ. of Boyd County*, 521 F.3d 602, 609 (6th Cir. 2008) ("[W]here a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists."). Rather, the requirement for injury in fact demands that Plaintiffs also allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute." *Nat'l Fed'n of the Blind,* 647 F.3d at 210 (quoting *Miss. State Dem. Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008)). Further, the "allegations of chilled speech or self-censorship must

8

arise from a fear of prosecution that is not imaginary or wholly speculative." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). In this context, the same standards apply to Plaintiffs' vagueness challenge. *See Doe v. Landry*, 909 F.3d 99, 115-16 (5th Cir. 2018).

Here, Plaintiffs make allegations regarding past conduct and express "concern" with R.S. 14:61. *E.g.* Compl. ¶¶ 22, 25, 26, 27, 96, 99, 100. Only 350 New Orleans even arguably alleges an intent to engage in future conduct proscribed by the statute. *Id.* at ¶ 28. But no Plaintiff alleges an intent to protest on private property, and the restrictions imposed by R.S. 14:61 must be read in the context of the statute's carveouts:

> Nothing in this Section shall be construed to apply to or prevent the following:
>
> **(1) Lawful assembly and peaceful and orderly petition**, picketing, or demonstration for the redress of grievances or to express ideas or views regarding legitimate matters of public interest, including but not limited to any labor dispute between any employer and its employee or position protected by the United States Constitution or the Constitution of Louisiana.
>
> **(2) Lawful commercial or recreational activities conducted in the open or unconfined areas around a pipelin**e, including but not limited to fishing, hunting, boating, and birdwatching.
>
> **(3)** Nothing in this Section shall be construed to prevent the owner of an immovable from exercising right of ownership, including use, enjoyment, and disposition within the limits and under the conditions established by law.

La. R.S. 14:61(D) (emphasis added).

*Morrison v. Board of Education of Boyd County*, 521 F.3d 602 (6th Cir. 2008), is instructive. In that case, a group of plaintiffs alleged that a school speech code prevented students from voicing certain opinions. *Id.* at 606-07. But the code included a careveout: it "shall not be interpreted as applying to speech otherwise protected under the state or federal constitutions . . . ." *Id.* at 605. The court held that in the absence of threats or actual punishment for protected speech, the presence of the carveout left plaintiffs without a justiciable injury. *Id.* at 610.

9

Here, like in *Morrison*, there are no allegations that any Defendant has threatened to arrest or prosecute *anyone* for activities protected by the carveouts. To the contrary, the Complaint alleges that – like the Arrestee Plaintiffs – all arrests have been for plainly *unlawful* conduct on private property. *See* Compl. ¶ 11 ("[T]here have been more than a dozen arrests of people . . . who were charged with felonies for acts which *would have been charged as misdemeanor trespass* before August 1, 2018 . . . ." (emphasis added)). Plaintiffs "concern" with the impact of R.S. 14:61 is not enough for standing either. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Accordingly, no Plaintiff has alleged facts adequate to support standing under a "chill" theory. Accordingly, all Plaintiffs other than the Arrestee Plaintiffs should be dismissed.

      **C.**     **The Landowners lack standing.**

Like the other Plaintiffs, none of the Landowners plead that they intend to violate R.S. 14:61. Rather, they plead that they "are concerned that they . . . face the possibility of five years in prison *if* they run afoul of the law," and "[t]hey *may consider* allowing guests . . . back on their land . . . ."). Compl. ¶¶ 25, 95. Such conjectural and hypothetical allegations are insufficient to establish standing. *See Nat'l Fed'n of the Blind,* 647 F.3d at 209 (citing *Miss. State Democratic Party*, 529 F.3d at 538). Indeed, short of an allegation that they intend to physically interfere with a pipeline on their property, there is no reason to believe the Landowners are even capable of violating R.S. 14:61: The statute provides that "[n]othing in this Section shall be construed to prevent the owner of an immovable from exercising right of ownership, including use, enjoyment, and disposition within the limits and under the conditions established by law." R.S. 14:61(D)(3); *see also Morrison*, 521 F.3d. at 610. The Landowners allege no right of ownership they themselves wish to undertake that would be inconsistent with any "limits" or "conditions established by law." Their claims must therefore be dismissed for lack of Article III standing. *See Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298-99 (1979) ("When plaintiffs do not claim they have ever been threatened with prosecution, that a prosecution is likely, or even that a

10

prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court.").

The Fractional Co-Owners have yet more barriers to standing. Under Louisiana law, "[a]s against third persons, a co-owner has the right to use and enjoy the thing as if he were the sole owner." La. C.C. art. 802. But the comments to that article make clear that a single co-owner can eject third-party trespassers:

> [A]s against third persons, a co-owner has the right to use and enjoy the thing as if he were its sole owner. For example, a co-owner may alone take all the necessary steps for the preservation of the property, including the institution of suits against trespassers or usurpers.

*Id.* at cmt. c; *see also, e.g.*, *Whitlock v. Fifth La. Dist. Levee Bd.*, 164 So. 3d 310, 318 (La. App. 2d Cir. 2015). And no collection of co-owners can disturb a dominant estate's rights: Here, BPP's right to use the right-of-way without disturbance. *See, e.g.*, *Walters v. Thrasher*, 381 So. 2d 557, 561 (La. App. 2d Cir. 1980).[6]

Each of the plaintiffs arrested for violation of La. R.S. 14:61 was arrested in connection with their presence on property in which the Fractional Co-Owners have an interest. Compl. ¶¶ 19-21, 66-68, 75. But another co-owner of the Property, acting through BPP, asked police to eject those three plaintiffs. Exh. 10. That right to eject third persons is enforceable under unchallenged law. *E.g.*, La. R.S. 14:63. The Fractional Co-Owners make no allegations from which the Court can plausibly infer a risk that a guest would be arrested absent a request from a co-owner. And the Fractional Co-owners offer no explanation as to how invalidating the challenged portion of R.S. 14:61 would permit them

---

[6] The essence of the Landowners' claims is an attempt to spin questions about the extent of their rights vis-à-vis a dominant estate — a pipeline right of way — into a federal question. Compl. ¶¶ 25, 94-96. But a dispute over the scope of a servitude is a quintessential state law question. And at least vis-à-vis the Property, the expropriation proceeding was the forum for that dispute. All of the Landowners other than Lavigne were parties to that proceeding, and they should not be permitted to collaterally attack the resulting final judgment by challenging the constitutionality of a trespass statute they plead no intent to violate.

to invite guests over a co-owner's objection in light of clear Louisiana law. *E.g.*, La. C.C. art. 802 cmt. c. The Fractional Co-Owners therefore suffer no injury in fact from R.S. 14:61, and they offer no theory as to how their non-injury could be redressed by the relief they request.

The only remaining Landowner is Plaintiff Lavigne. Her standing is even more dubious: she does not plead that a pipeline or servitude exists on her property. Rather, she alleges that her property "*was* long subject to an oil, gas, and mineral lease" and that pipelines "*potentially*" run through her property. Compl. ¶ 22. Such allegations are merely consistent with standing, stop far short of the line between the possibility and plausibility, and must therefore be dismissed. *Iqbal*, 556 U.S. at 678.

### D. The Arrestee Plaintiffs' standing is limited and uncertain, and their claims may be subject to *Younger* abstention.

The three Arrestee Plaintiffs have, at best, very limited standing. Each of the Arrestee Plaintiffs was arrested for conduct that allegedly occurred within a recorded pipeline right of way. Plaintiffs' allegations that the right of way had not been perfected at the time of the Arrestee Plaintiffs' conduct suggests a defense to a charge under La. R.S. 14:61, even if their conduct would still be unlawful under other statutes which they do not challenge, *e.g.*, La. R.S. 14:63.

No charging decision has been made. Compl. ¶ 80. That charging decision may eliminate the Arrestee Plaintiffs' standing for prospective relief. Fed. R. Civ. P. 12(h)(3).[7] The completion of criminal proceedings against them certainly would. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540-41 (2018); *Lyons v. City of L.A.*, 461 U.S. 95, 102 (1983). And if the Arrestee Plaintiffs are charged, their claims would be subject to abstention under *Younger v. Harris*, 401 U.S. 37 (1971).

---

[7] Defendant Landry acknowledges *Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018), *rehearing en banc denied by an evenly divided court*, 907 F.3d 885 (5th Cir. 2018), which held that an arrestee had standing to challenge the constitutionality of a statute, at least so long as the statute of limitations had not run and in the absence of a formal disavowal of prosecution. Defendant Landry submits that the panel decision in *Seals* was wrongly decided for, *inter alia*, the reasons set forth in the dissent from rehearing en banc. Defendant Landry therefore preserves his argument that the Arrestee Plaintiffs lack standing if the District Attorney enters a nolle prosequi or otherwise disavows prosecution.

### III.     CERTAIN CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6).

#### A.     Plaintiffs fail to state a claim for vagueness.

Plaintiffs allege that R.S. 14:61, as amended by H.B. 727, is unconstitutionally vague. Compl. ¶¶ 109-115. "A statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). Mere imprecision does not render a statute vague. *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir. 1983). Indeed, "[a] facial challenge for vagueness is appropriate only on an allegation that the law is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id.* (quoting *Coastes v. Cincinnati*, 402 U.S. 611, 614 (1971)).

Here, Plaintiffs' vagueness challenge centers on an allegation that "[t]he addition of approximately 125,000 miles of pipelines, much of which is invisible and unmarked, to the definition of critical infrastructure . . . renders the law vague and subject to arbitrary and discriminatory enforcement." Compl. ¶ 111. Plaintiffs further allege that the statute "fails to precisely define and does not clarify what constitutes impermissible trespass in areas of public access like sidewalks . . . or in areas that are not fenced off or clearly marked." *Id.* at ¶ 112. Plaintiffs ignore the requirement for a "physical barrier" in subsections (A)(1) and (A)(4), and the implicit requirement for physical barriers in subsection (A)(2). Where a physical barrier is present, the statute can in no sense be called vague or even imprecise.

Plaintiffs further ignore the requirement that, where physical barriers are not present, a person must remain on the premises "after having been forbidden to do so . . . by any owner, lessee, or custodian of the property or by any other authorized person." La. R.S. 14:61(A)(3). The requirement that the person remain after being forbidden to do so negates Plaintiffs' naked allegation of vagueness.

13

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 554 (holding that procedure calling for notices of violation before filing charges rendered the danger of arbitrary and discriminatory enforcement "unfounded"); *see also Cox v. Louisiana*, 379 U.S. 559 (1965) (upholding statute forbidding protests "near" a courthouse against vagueness challenge). In raising a hypothetical about "areas of public access . . . like sidewalks," Plaintiffs' similarly ignore the statute's careveout for "[l]awful assembly and peaceful and orderly petition, picketing, or demonstration for the redress of grievances or to express ideas or views . . . ." La. R.S. 14:61(D)(1).

What Plaintiffs actually challenge is not vagueness. On a given tract of land, a pipeline exists or does not, a person is present on that tract or is not, and the person has been forbidden from remaining or not. Those facts are ascertainable, and they place a person on notice of what is forbidden. Nothing more is required. *Doe v. Landry*, 909 F.3d 99, 118 (5th Cir. 2018).

The Fifth Circuit has rejected that a law "must delineate the exact actions a person would have to take to avoid liability." *Id.* (quoting *Roark & Hardee*, 522 F.3d at 552). La. R.S. 14:61 nevertheless does that in spades: it requires either "intentional entry" into an area "completely enclosed by any type of physical barrier" or disobeying a command forbidding the person from remaining on the premises of a pipeline. Plaintiffs offer no allegations plausibly suggesting the contrary. Their vagueness claim should be dismissed.

### B. Plaintiffs fail to state a claim for viewpoint discrimination.

Plaintiffs allege that R.S. 14:61 is unconstitutional "because it singles out a particular viewpoint for harsher punishment." Compl. ¶ 124; *see also id.* at ¶ 128. "Viewpoint discrimination is . . . an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Thus, to state a claim, Plaintiffs must thus plead facts that, if true, plausibly allege La. R.S. 14:61 is content-based.

Here, the statute makes no reference to the content of speech. Rather, the challenged amendment to the statute generally forbids accessing areas of pipeline protected by physical barriers or "[r]emaining upon or in the premises of a [a pipeline] after having been forbidden to do so . . . by any owner, lessee, or custodian of the property or by any other authorized person." R.S. 14:61(A)(3). The law is accordingly content-neutral. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 643 (1994) ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral.").

Further, Plaintiffs themselves implicitly allege a viewpoint neutral purpose for the statute: to give the law enough teeth to protect property owners from trespassers. Plaintiffs concede that under prior law – which Plaintiffs do not challenge – "those who engaged in . . . civil disobedience in the vicinity of pipelines or pipeline construction sites faced the possibility of a misdemeanor charge of trespass if they remained on the property after being forbidden." Compl. ¶ 7. That is precisely the conduct for which Plaintiffs White Hat and Mejia were arrested. *Id.* at ¶ 91 (identifying La. R.S. 14:63). The real gist of Plaintiffs' complaint is that they want to unlawfully trespass, but they aren't willing to face serious consequences for doing so. *See id.* at ¶¶ 7, 11, 91, 121 ("They . . . do not want to risk a felony arrest in order to protest.").[8] *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 118 (1972) (noting that

---

[8] To the extent the Court deems documents quoted in the Complaint to be incorporated by reference, those documents identify conduct far more serious than trespass:

> Over the past year, protesters have taken to Louisiana's bayous in an attempt to hinder construction of the Bayou Bridge Pipeline. Protesters have chained themselves to equipment, formed "aerial blockades" blocking the pipeline route and kayaked around construction sites. These unlawful tactics put workers, law enforcement and nearby community members at risk.

Exh. 9 (selectively quoted at Compl. ¶ 45). That citizens subject to such misconduct may have petitioned the legislature to pass a statute does not establish an improper or viewpoint-discriminatory purpose. *Cf. United States v. O'Brien*, 391 U.S. 367, 384 (1968) (rejecting First Amendment challenge: "It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it.").

15

even in a traditional public forum like a sidewalk, "expressive activity may be prohibited if it . . . involves substantial disorder or invasion of the rights of others").

Plaintiffs point to arrests of protesters as evidence that R.S. 14:61 is discriminatory. Compl. ¶ 1. That the law may impose a disparate impact on anti-pipeline protesters does not demonstrate that it was motivated by a content- or viewpoint-based purpose. *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 763 (1994); *see also Brazos Valley Coalition for Life, Inc. v. City of Bryan*, 421 F.3d 314, 326 (5th Cir. 2005). On the contrary, a regulation like R.S. 14:61 "that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others, *McCullen v. Coakley*, 573 U.S. 464, 480 (2014). As Justice Souter explained:

> It is important to recognize that the validity of punishing some expressive conduct, and the permissibility of a time, place, or manner restriction, does not depend on showing that the particular behavior or mode of delivery has no association with a particular subject or opinion. Draft card burners disapprove of the draft and abortion protesters believe abortion is morally wrong, There is always a correlation with subject and viewpoint when the law regulates conduct that has become the signature of one side of a controversy. But that does not mean that every regulation of such distinctive behavior is content based as First Amendment doctrine employs that term.

*Hill v. Colorado*, 530 U.S. 703, 736 (2000) (Souter, J., concurring). Accordingly, Plaintiffs' viewpoint discrimination claim should be dismissed.

## **CONCLUSION**

Plaintiffs' real gripe is not with any vagueness in R.S. 14:61. Plaintiffs' instead want to continue their civil disobedience – trespassing – but aren't willing to risk a serious punishment for doing so. That does not make R.S. 14:61 unconstitutional. Not surprisingly, Plaintiffs' Complaint suffers serious defects vis-à-vis sovereign immunity, venue, subject matter jurisdiction, and even stating a claim. Accordingly, all claims against Attorney General Landry should be dismissed, and the complaint dismissed for lack of proper venue. Further, all Plaintiffs other than the Arrestee Plaintiffs should be

dismissed for lack of standing, and Plaintiffs vagueness and viewpoint discrimination claims should be dismissed for failure to state a claim.

                        JEFF LANDRY
                        ATTORNEY GENERAL

/s/ *Joseph Scott St. John*
Elizabeth B. Murrill (La. Bar #20685)
  *Solicitor General*
Joseph Scott St. John (La. Bar #36682)
  *Deputy Solicitor General*

Angelique D. Freel (La. Bar #28561)
  *Civil Division Director*
Ryan M. Seidemann (La. Bar #28991)
  *Assistant Attorney General*
Harry J. Vorhoff (La. Bar #35365)
  *Assistant Attorney General*

LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone No. 225-326-6766
Facsimile No. 225-326-6793
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
freela@ag.louisiana.gov
seidemannr@ag.louisiana.gov
vorhoffh@ag.louisiana.gov

*Counsel for Attorney General Jeff Landry*