UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANNE WHITE HAT, RAMON MEJÍA, KAREN SAVAGE, SHARON LAVIGNE, HARRY JOSEPH, KATHERINE AASLESTAD, PETER AASLESTAD, THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS, and LOUISIANA BUCKET BRIGADE<br>Plaintiffs | * * * * * * * * * * | CIVIL ACTION<br><br>NO. 3:19-cv-00322-JWD-EWD<br><br><br>JUDGE JOHN W. deGRAVELLES |
| VERSUS | * * * | MAGISTRATE JUDGE<br>ERIN WILDER-DOOMES |
| JEFF LANDRY, in his official capacity as Attorney General of Louisiana; BO DUHÉ, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office; RONALD J. THERIOT, in is official capacity as Sheriff of St. Martin Parish<br>Defendants | * * * * * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS; ALTERNATIVELY, TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA FILED ON BEHALF OF M. BOFILL DUHÉ IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 16TH JUDICIAL DISTRICT, STATE OF LOUISIANA**

## I. BACKGROUND

### A. Plaintiffs

The plaintiffs in this case are the following: Anne White Hat ("White Hat"), Ramon Mejia ("Mejia"), Karen Savage ("Savage")[1], Sharon Lavigne ("Lavigne"), Harry Joseph ("Joseph"), Katherine Aaslestad and Peter Aaslestad ("The Aaslestads"), Theda Larson Wright ("Wright"), Alberta Larson Stevens ("Stevens"), Judith Larson Hernandez ("Hernandez"), RISE St. James, 350 New Orleans, and Louisiana Bucket Brigade.

---

[1] Plaintiffs White Hat, Mejia, and Savage are sometimes referred to herein as the "Arrestee Plaintiffs."

The complaint arises out of the construction of the so-called "Bayou Bridge Pipeline" in St. Martin Parish, Louisiana. White Hat, Mejia and Savage allege that in August-September 2018, in connection with protests against the construction of the Pipeline on land in St. Martin Parish, they were arrested by the St. Martin Parish Sheriff's Office for unauthorized entry of a "critical infrastructure" in violation of La. R. S. 14:61. (Rec. Doc. 1 ¶ 85-93.)

Plaintiffs Mejia and Savage allege that they were also cited for "Remaining After Being Forbidden" in violation of La. R.S. 14:63.3, a misdemeanor. That statute is not at issue in these proceedings.

Plaintiffs The Aaslestads, Wright, Stevens, and Hernandez allege that they are landowners of undivided interest in certain property located in St. Martin Parish where the arrests allegedly occurred. They allege that the Pipeline runs through their property. They allege that they were opposed to its construction. They allege that:

> They are concerned that they and other landowners, and guests they allow onto their property, face the possibility of five years in prison if they run afoul of the law merely by being present on or in the vicinity of the pipeline on their property with no clear direction as to why, when, who decides, and how the law is to be applied.

(Rec. Doc. 1, ¶ 25.)

Plaintiff Joseph alleges he is a resident of the Fifth District of St. James Parish, "a predominately African American community heavily inundated by petrochemical facilities…" He alleges that he "has been an active and vocal community leader who speaks out frequently against the siting of new petrochemical companies…" in St. James. (Rec Doc. 1, ¶ 26.) Joseph alleges that he was "very active and outspoken against the Bayou Bridge Pipeline project…" and that he "has helped organize public events on these issues and has organized and participated in marches and press conferences about the Bayou Bridge Pipeline…, and at times attempted to monitor, observe

and report on construction of the Bayou Bridge Pipeline." *Id.* Joseph alleges that he "…is concerned that the new law[2] will make it more difficult to organize and participate in marches in opposition to such projects, given the proliferation of pipelines in the community." *Id.*

Plaintiff Sharon Lavigne also alleges that she lives and resides in the Fifth District of St. James Parish. She alleges that she is the founder and president of RISE St. James, alleged to be a "grassroots faith based organization dedicated to opposing the siting of new petrochemical facilities in the area…" (Rec. Doc. 1.¶ 24)

RISE alleges that it is "concerned that the law could be used against them to prevent or discourage their protests and public events…" (Rec. Doc. 1, ¶ 27.) RISE alleges that its members "have engaged in acts of civil disobedience and have incurred misdemeanor charges when protesting near or on pipeline construction sites…" *Id.* They allege that "their work and political …are directly impacted by the amendment to La. R.S. 14:61 as it severely increases the punishment for presence on or near pipelines and chills their First Amendment expression…" *Id.*

Plaintiff 350 New Orleans alleges that it "... is a volunteer climate activist group…based in New Orleans that supports local initiatives connecting the issues in the region to international climate advocacy…" (Rec. Doc. 1, ¶ 28.)

Plaintiff Louisiana Bucket Brigade alleges that it is a "non-profit environmental health and justice organization based in New Orleans that works with communities in Louisiana located near oil refineries and chemical plants, which are often predominantly African-American communities." (Rec. Doc. 1, ¶ 29.) The Louisiana Bucket Brigade further alleges that "It has members who frequently exercise their First Amendment rights to advocate, educate about, and protest against environmental injustices, including pipeline projects." (Rec. Doc. 1, ¶ 29.) The

---

[2] La. R.S. 14:61 as amended.

Complaint further alleges that:

> Bucket Brigade staff also reported live and frequently filmed activities in the area, interviews with experts, community members, and activists, at or near pipeline construction sites and have been at times threatened by pipeline construction workers and/or security personnel. Their work and political advocacy are directly impacted and chilled by the amendment to La. R.S. 14:61 as it severely increases the punishment for presence on or near pipelines and its members are concerned about the possibility of arrests and felony charges.

(Rec. Doc. 1, ¶ 29.)

### B.  Defendants

#### 1) Sheriff Ronald J. Theriot in his official capacity as Sheriff of St. Martin Parish

Defendant Ronald J. Theriot is the sheriff of St. Martin Parish, the parish in which the Complaint alleges "protesters have been arrested, booked, detained, and charged with felonies under the recent amendment to La. R.S. 14:61." (Rec. Doc. 1, ¶ 32.)

#### 2) M. Bofill Duhé, in his official capacity as District Attorney for the 16th Judicial District

Defendant District Attorney M. Bofill Duhé is the District Attorney for the Sixteenth Judicial District ("Duhé") which is composed of the parishes of Iberia, St. Mary and St. Martin.[3] Plaintiffs White Hat, Mejia and Savage assert that they are "…currently facing the possibility of Prosecution…" (Rec Doc. 1, ¶¶ 19-21.) The Arrestee Plaintiffs do not allege that the district attorney has initiated a prosecution against them. ("As of the date of this filing, the charges have not yet been accepted by the District Attorney of St. Martin parish.") (Rec. Doc. 1, ¶ 80.)

#### 3) Jeff Landry, in his official capacity as Attorney General of Louisiana

Defendant Jeff Landry is the attorney general of the state of Louisiana. The Complaint

---

[3] La. R. S. 13:477 (16).

alleges in pertinent part as follows:

> …exercises supervision over all district attorneys in the state and has authority to institute a prosecution as he may deem necessary for the assertion or protection of the rights and interests of the state, pursuant to La.C.Cr.P. Art. 62. As such Landry wields authority over criminal justice policy in Louisiana including the enforcement of La. R.S. 14:61 prohibiting unauthorized entry of critical infrastructure.

(Rec. Doc. 1, ¶ 30.)

### C. The Expropriation and Trespass Proceeding

The Complaint contains extensive allegations concerning state court actions for expropriation brought in St. Martin Parish on behalf of Bayou Bridge Pipeline, LLC and a trespass action filed by plaintiff Peter Aaslestad against Bayou Bridge Pipeline, LLC.[4] For example, the Complaint alleges:

> 65. At the time the amendments to La. R.S. 14:61 went into effect, the Bayou Bridge Pipeline was being contested in the courts and constructed in St. Martin Parish amid ongoing protests. Because of concerns about the new felony law, plaintiffs White Hat and Mejía, as Water Protectors, as well as plaintiff Savage, a journalist, endeavored to stay on public waterways and/or property where they had authorization to be as they observed and protested.
>
> 66. Pipeline construction crews and Water Protectors converged on a very remote 38-acre parcel of property in St. Martin Parish which is only accessible by boat.
>
> 67. The property at issue was co-owned by numerous individuals, including plaintiff Landowners – Katherine and Peter Aaslestad, Theda Larson Wright, Alberta Larson Stevens, and Judith Larson Hernandez
>
> 68. Landowners Wright, Stevens, and Hernandez had granted the protesters permission to be on the property and contacted the St. Martin Parish Sheriff's Office to communicate this authorization.

---

[4] This Court can and respectfully should take notice of the Reasons For Judgment rendered by Judge Keith J. Comeaux in the matter entitled *Bayou Bridge Pipeline, LLC vs. 38 Acres, More or Less, Located in St. Martin Parish; Barry Scott Carline, et al*, bearing no. 87011 on the docket of the 16th Judicial District Cour for the Parish of St. Martin, State of Louisiana. (Rec. Doc. 30-6).

69. At the same time, the pipeline company did not have legal authority to be on the property, or to be clearing trees, trenching, or assembling the pipeline. The company had not concluded voluntary agreements with all the co-owners to enter onto the property and begin construction, nor had it secured a court order allowing it do so through an expropriation proceeding.

70. On July 27, 2018, Peter Aaslestad filed suit against the company accusing it of trespass, and seeking to enjoin its activities on the property. *See* Petition for Injunction in *Aaslestad v. Bayou Bridge Pipeline, LLC.,* Case No. 87010, 16th Judicial District Court, St. Martin Parish.

71. Shortly thereafter[5], the pipeline company finally filed an expropriation suit in St. Martin Parish against over 100 co-owners of the property seeking a right of way. *See Bayou Bridge Pipeline, LLC v 38.00 Acres, More or Less, in St. Martin Parish*; *Barry Scott Carline, et al,* Case No. 87011-e, 16th Judicial District Court, St. Martin Parish.

(Rec Doc. 1, ¶¶ 65-71.)

A trial was held before Judge Keith R. J. Comeaux on November 27-29, 2018. In his Reasons for Judgment, Judge Comeaux found as follows:

> It is clear from the record that Bayou Bridge Pipeline, LLC, the entity used by Energy Transfer to obtain right of way pipelines in this matter, did title examination work on the 38 acres more or less located in St. Martin Parish. It was discovered by Bayou Bridge Pipeline, LLC that over 400 owners of the property existed in its chain of title. Negotiations occurred and were established by Bayou Bridge Pipeline, LLC with all the record owners that Bayou Bridge Pipeline could obtain through its search of the public records in St. Martin Parish. Numerous rights of way were obtained from hundreds of owners of the 38 acres more or less, but others were either not located or refused to sign right of way agreements with Bayou Bridge Pipeline, LLC. Landowners herein fit into the latter category and oppose the pipeline and refuse to sign right of way agreements on this particular tract.

(Rec. Doc. 30-6, p. 3).

---

[5] In his Reasons for Judgment (infra) Judge Comeaux noted that "On July 27, 2018, Bayou Bridge Pipeline, LLC filed the instant action for expropriation against numerous landowners of the 38 acres of land…" (Rec. Doc. 30-6).

Judge Comeaux further found that the following ownership interest in the 38 acres and valuation thereof was established:

> **Theda Larson Wright**
> 0.0000994 (interest) x $871 (appraised value8 ) = **$0.09** (rounded up)
> **Peter K. Aaslestad**
> 0.0005803 (interest) x $871 (appraised value) = **$0.51** (rounded up)
> **Katherine Aaslestad**
> 0.0005803 (interest) x $871 (appraised value) = **$0.51** (rounded up)

(Rec. Doc. 30-6, p. 8).

Judge Comeaux found that Bayou Bridge Pipeline did trespass but in awarding Wright and the Aaslestads $150 each as compensation therefore, the Court noted the following:

> The Court finds that their total ownership interest is very minor compared to the ownership interests of the other numerous landowners. **Additionally, all the defendants testified that they had very little contact with the property. The Aaslesteds testified that they had never been on the property prior to November 25, 2018, and Ms. Wright testified that she had never been on the property. Parties indicated that they had never leased the property and had not paid any taxes on the property.** The parties further testified they made no effort to possess the property as owner other than filing legal documentations in the chain of title. The Court notes that although all the defendants claim some mental anguish for this property, no party has sought medical attention and all the defendants are self-admitted advocates against pipelines. The Court is vested with the task of determining what are the damages for the trespass prior to the expropriation judgment. The Court finds that an award of $75 each for the trespass of the approximately 5 months of activity on the property prior to the final expropriation is just damages to the defendants based on their ownership interests. Therefore, the Court will award a total to Theda Larson Wright, Peter K. Aaslestad and Katherine Aaslestad the sum of $150 each as compensation and damages pursuant to the claims fostered by them.

(Rec. Doc. 30-6, pp. 11-12). (**Emphasis** added).

### D. The Statute (La. R. S. 14:61)

The statute alleged to be unconstitutionally vague (La. R. S. 14:61) provides as follows:

A. Unauthorized entry of a critical infrastructure is any of the following:

(1) The intentional entry by a person without authority into any structure or onto any premises, belonging to another, that constitutes in whole or in part a critical infrastructure that is completely enclosed by any type of physical barrier.

(2) The use or attempted use of fraudulent documents for identification purposes to enter a critical infrastructure.

(3) Remaining upon or in the premises of a critical infrastructure after having been forbidden to do so, either orally or in writing, by any owner, lessee, or custodian of the property or by any other authorized person.

(4) The intentional entry into a restricted area of a critical infrastructure which is marked as a restricted or limited access area that is completely enclosed by any type of physical barrier when the person is not authorized to enter that restricted or limited access area.

B. For the purposes of this Section, the following words shall have the following meanings:

(1) "Critical infrastructure" means any and all structures, equipment, or other immovable or movable property located within or upon chemical manufacturing facilities, refineries, electrical power generating facilities, electrical transmission substations and distribution substations, water intake structures and water treatment facilities, natural gas transmission compressor stations, liquified natural gas (LNG) terminals and storage facilities, natural gas and hydrocarbon storage facilities, transportation facilities, such as ports, railroad switching yards, pipelines, and trucking terminals, or any site where the construction or improvement of any facility or structure referenced in this Section is occurring.

(2) "Fraudulent documents for identification purposes" means documents which are presented as being bona fide documents which provide personal identification information but which are, in fact, false, forged, altered, or counterfeit.

(3) "Pipeline" means flow, transmission, distribution, or gathering lines, regardless of size or length, which transmit or transport oil, gas, petrochemicals, minerals, or water in a solid, liquid, or gaseous state.

C. Whoever commits the crime of unauthorized entry of a critical infrastructure shall be imprisoned with or without hard labor for not more than five years, fined not more than one thousand dollars, or both.

**D. Nothing in this Section shall be construed to apply to or prevent the following:**

**(1) Lawful assembly and peaceful and orderly petition, picketing, or demonstration for the redress of grievances or to express ideas or views regarding legitimate matters of public interest, including but not limited to any labor dispute between any employer and its employee or position protected by the United States Constitution or the Constitution of Louisiana.**

**(2) Lawful commercial or recreational activities conducted in the open or unconfined areas around a pipeline, including but not limited to fishing, hunting, boating, and birdwatching.**

**(3) Nothing in this Section shall be construed to prevent the owner of an immovable from exercising right of ownership, including use, enjoyment, and disposition within the limits and under the conditions established by law.**

(**Emphasis** added).

It is respectfully submitted that this Court should abstain from exercising its jurisdiction with respect to the claims for injunctive an declaratory relief by the Arrestee Plaintiffs and otherwise dismiss these proceedings; alternatively this Court should transfer these proceedings to the United States District Court for the Western District of Louisiana for further proceedings.

## II. VENUE IS NOT PROPER IN THIS COURT; ALTERNATIVELY, THESE PROCEEDINGS SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA

Venue is clearly not proper in the Middle District of Louisiana. In pertinent part, plaintiffs allege that venue is proper in this district pursuant to 28 U.S.C. 1391 (b)(2) "because a substantial portion of the events giving rise to Plaintiffs claims occurred in this district." (Rec. Doc. 1, ¶ 18.) This statement is contradicted by other allegations of the complaint and by facts of which this court

may take judicial notice. As a matter of law, District Attorney Duhé conducts his official duties in St. Mary, Iberia and St. Martin Parishes, all of which are within the jurisdiction of the United States District Court for the Western District of Louisiana. The Complaint alleges that the arrests of the Arrestee Plaintiffs occurred in St. Martin Parish. In fact, even in one counts the speculative claims by the putative plaintiffs alleged to be domiciled in St. James and Orleans Parishes, those future actions would have occurred within the jurisdiction of the United States District Court for the Eastern District of Louisiana. The only named defendant located in this judicial district is Attorney General Jeff Landry ("Attorney General" or "A.G."), who is not a proper party to these proceeding. Movant further adopts here the reasoning of the Attorney General in his motion to dismiss concerning the impropriety of plaintiffs naming the AG as a Defendant. (Rec. Doc. 30-1, pp. 5-7.)

Alternatively, should this Court not abstain from exercising its jurisdiction and/or to dismiss the claims against Movant, Movant respectfully requests that this case be transferred to the U.S. District Court for the Western District of Louisiana in accordance with 28 U.S.C. §1404(a) and §1406. The facts and circumstances giving rise to the claims as alleged by Plaintiffs arose in St. Martin Parish, which located in the Western District, making it a proper venue for transfer for convince of the parties under §1404(a). See *Lozano v. Civiletti*, 89 F.R.D. 475, 479 (D.D.C.1980)(finding transfer from Washington D.C. to Western District of Texas proper under §1404(a) proper when many of the defendants and witnesses were residents of that district, finding transfer would therefore likely produce better evidence and reduce cost).

Under §1406, transfer is authorized in the event this Court does not dismiss the action but finds venue to be improper. See *Lozano*, *supra*, at 480.

### III. STANDARDS APPLICABLE TO MOTION TO DISMISS

In considering a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), the

district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[6] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). That said, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), 127 S.Ct 1955, 167 L.Ed.2d 929 (2007), and two years later in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), the U.S. Supreme Court specifically rejected blind adherence to the longstanding maxim that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief …'" *Id*. at 1969.[7] In *Twombly,* the Supreme Court held that Federal Rule of Civil Procedure 8(a) requires factual allegations sufficient "to raise a right to relief above the speculative level." Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face," *Twombly*, at 1974.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the plaintiff is entitled to relief. *Iqbal,* 129 S.Ct. at 1949. Plausibility "is not akin to a probability requirement;" rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading a fact that is "merely consistent" with a defendant's liability does not satisfy the plausibility standard. *Id.*

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do.*" *Id*. at 1964-65. (*Emphasis* added.) *Dominguez-Gonzalez v. Clinton*, 454 Fed App'x 287, 2011 U.S. App. LEXIS 23657 (5th Cir. Tex. 2011), writ denied 2012 U.S. LEXIS 7152 (2012).

### IV.  PLAINTIFFS LACK STANDING TO BRING THIS PROCEEDING

---

[6] The Court may also consider documents incorporated in the complaint by reference and matters of which a Court may take judicial notice. *Funk v. Stryker Corporation, et al*, 631 F. 3rd 777, 783 (5th Cir. 2011).
[7] In fact, it can be fairly said that the Supreme Court has jettisoned that doctrine.

A.  **General Standards**

Article III of the U.S. Constitution restricts the jurisdiction of the federal courts to actual cases and controversies. The case or controversy requirement has been effectuated by several doctrines, the most important of which is standing. *Parkhurst v. Tabor*, 569 F. 3d 861, 865 (8th Cir. 2009), quoting *Allen v. Wright*, 468 U. S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 566 (1984). To establish constitutional standing "the plaintiff must show that [she] has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent, fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision." *Lugan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Moreover, because plaintiffs seek injunctive relief

B.  **The Plaintiffs Fail to Allege Facts Which Would Support Standing to Bring First Amendment Claims**

The Plaintiffs are suing for prospective relief only, asking for a declaratory judgment regarding the constitutionality of R.S. 14:61 and an injunction to prevent the Defendants from enforcing this statute as it pertains to pipelines. The plaintiffs make conclusory allegations that they are "concerned' about the new law and that "the new law makes it unclear where they can be present…" (Rec. Doc. 1, ¶ 25.) Or that the amendment to La. R.S. 14:61 "severely increases the punishment for presence in or near pipelines" and thus "chills their First Amendment expressions of … views and deters others from joining their protests and demonstrations…" *Id*., ¶ 28). See also ¶ 108 ("Their [Bucket Brigade] work and political advocacy are directly impacted and chilled by the amendment to La. R. S. 14:61 as it severely increases the punishment for remaining on or possibly near ... pipelines…") Their claim is perhaps summed up in Paragraphs 121 and 122 of the Complaint:

> 121. Plaintiff landowners and environmental and racial justice advocates are concerned and chilled in the exercise of their First Amendment rights to speech and expressive conduct as well as their rights of assembly. They are worried about how the amended law will be applied and do not want to risk a felony arrest in order to protest.
>
> 122. As amended, La. R.S. 14:61 impermissibly prohibits Plaintiffs from exercising their constitutionally protected right to speech and expressive conduct, as well as assembly and the press, and thereby violates the First Amendment to the U.S. Constitution. Such violations cause and will continue to cause Plaintiffs irreparable harm unless enjoined by this Court.

In cases such as this where plaintiffs allege a chilling effect on their First Amendment rights, it is clear that "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or threat of specific future harm…" *Laird v Tatum,* 408 U.S. 1, 92 S. Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972). The "federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Id* at 2326. Moreover, standing cannot be conferred by a self-inflicted injury. See *Zimmerman v. City of Austin, Texas*, 881 F.3d 378 (5th Cir. 2018). While solicitations are a form of protected speech, see *United States v. Kokinda*, 497 U.S. 720, 725, 110 S. Ct. 3115, 111 L.Ed.2d 571 (1990), and while government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury, see *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), to confer standing, allegations of chilled speech or "self-censorship must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" Further, Movant adopts by reference, the "chilling effect" arguments of the Attorney General. (Rec. Doc. 30-1, pp. 8-10).

## V. THIS COURT SHOULD RESPECTFULLY ABSTAIN FROM EXERCISING FEDERAL JURISDICTION[8]

Under the *Younger*[9] abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. As the 5th Circuit has recognized:

> Where those three criteria are satisfied, a federal court may enjoin a pending state-court criminal proceeding only if: (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) where other "extraordinary circumstances" threaten "irreparable loss [that] is both great and immediate."

*Gates v. Strain, supra,* at 880.

The Complaint alleges that the arrests of the Arrestee Plaintiffs took place in August and September 2018. While the Complaint asserts that no prosecution has been initiated by District Attorney Duhé, the arrests by Sheriff Theriot started the pending state court criminal proceeding for purposes of *Younger* abstention. See *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

In any event, there is no allegation that District Attorney Duhé would bring a criminal proceeding in bad faith or to harass the Arrestee Plaintiffs or any Plaintiff. "A prosecution is taken

---

[8] In *Seals v. McBee,* 898 F.3d 587 (5th.Cir. 2018) the Fifth Circuit afforded standing to plaintiff-appellee Seals to allege the unconstitutionality of a Louisiana statute, under which he was arrested. Movant agrees with the Attorney General's argument that the case was wrongly decided and that the reasoning of Judge Edith Jones's dissenting opinion to a Per Curium decision denying rehearing *en banc* was correct. In any event, in Judge Jones's dissenting opinion, joined in by five other judges, Judge Jones noted that "…We emphasize …that nothing in this opinion should be understood as a comment *sub silentio* on the *Younger* issue or on the propriety of *Younger* abstention. *McBee,* (rehearing en banc denied by an evenly divided circuit), 907 F.3d 885 (2018).
[9] *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 69, 27 L.Ed.2d 669 (1971); *Gates v. Strain*, 885 F.3d 874 (5th Cir. 2018).

in bad faith if state officials proceed 'without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *accord Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988). "[T]he 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). Plaintiffs do make the argument that the statute under which they were arrested is unconstitutionally vague. However, the Arrestee Plaintiffs and all plaintiffs would certainly have the opportunity to litigate the issue of the statute's alleged vagueness in any state court criminal proceeding. *Thomas v. State,* 294 F Supp. 3d 576 (5th Cir. 2018).

Moreover, the State of Louisiana certainly has an interest in protecting critical infrastructure such as pipelines. The statute is not vague. It prohibits, for example, an "unauthorized" and "intentional" "entry of a critical infrastructure that is "completely enclosed by any type of physical barrier." The term "critical infrastructure" is further defined as "pipelines" and "**or** any site where the construction or improvement of any facility or structure referenced in this Section is occurring." Statutes are presumed to be constitutional and any doubt is to be resolved in the statute's favor. *State in the Interest of J.A.V.*, 558 So. 2d 214 (La. 1990).

In that case the Louisiana Supreme Court held that La. R.S. 14:63.3 (as it was then written) was not unconstitutionally vague. The provisions of La. R. S. 14:61 are clearly worded in terms which the average person of reasonable intelligence can comprehend and gives adequate notice of what is proscribed *Id* at 216. It is certainly not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Gates v. Strain, supra,* at 880.

Thus all of the tests for *Younger* abstention as to the "Arrestee Plaintiffs" are met in this case as a matter of law. Accordingly, this Court should abstain from exercising its jurisdiction over

the Arrestee Plaintiffs' claims for injunctive relief. For these same reasons, this Court should abstain from exercising its jurisdiction over the Arrestee Plaintiffs' claims for declaratory relief. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

## VI. THE COMPLAINT FAILS TO STATE A CLAIM

Plaintiffs have not alleged facts against District Attorney Duhé which would state a federal claim. The Activist Plaintiffs are active in Parishes other than St. Martin. The so-called landowner plaintiffs have failed to state a claim as well. Lavigne does not allege that she owns any property in St. Martin Parish that would be affected. The St. Martin landowners are informed of their rights by Judge Comeaux's Judgment. The Judgment spells out the rights of Bayou Bridge Pipeline, LLC and plaintiff landowners with respect to the property; to wit:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that pursuant to Louisiana Revised Statute 45:254, Bayou Bridge has a right to expropriate a servitude as depicted in Exhibit C across the property of Defendants, Absentee Defendants, and Default Defendants described as follows ("Property"):
>
> That certain tract of land composed of 38 acre(s), more or less, located in the NE/4 of the SE/4 of Section 4, T11S, R9E, in St. Martin Parish, Louisiana, and being more particularly described in Book 784, Page 176, Instrument 186257 of the public records of said Parish.
>
> \* \* \* \* \*
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that:
>
> (a) There be judgment in favor of Bayou Bridge and against Defendants, Absentee Defendants, and Default Defendants granting to Bayou Bridge, upon the payment by Bayou Bridge into the registry of the Court the sums set forth in this Final Judgment as just compensation, the following right of way, servitude, and other rights:

## Permanent Right of Way

A fifty foot (50') wide permanent and perpetual right of way and servitude (the "Permanent Right of Way") for the purpose of laying, constructing, maintaining, operating, altering, replacing, repairing, watering up, dewatering, changing the size of ... one (1) underground pipeline having a nominal diameter of twenty-four inches (24") or less, together with such above- or below-grade valves, fittings, meters, tie-overs, cathodic/corrosion protection, electrical interference mitigation, data acquisition and communications lines and devices, electric lines and devices, pipeline markers required by law, and other appurtenant facilities for the transmission of crude oil and all by-products and constituents thereof, under, upon, across, and through the Property, which is more particularly described and shown in Exhibit C. The Permanent Right of Way described in Exhibit C will be used for purposes of establishing, laying, constructing, reconstructing, installing, realigning, modifying, replacing, improving, adding, altering, substituting, operating, maintaining, accessing, inspecting, patrolling, protecting, repairing, changing the size of, relocating and changing the route of, abandoning in place and removing at will, in whole or in part, the Pipeline, and any and all necessary or useful appurtenances thereto, in a manner consistent with applicable laws and regulation.

Bayou Bridge shall have the right to select the exact location of the Pipeline within Permanent Right of Way. Bayou Bridge shall have the right to construct, maintain, and change slopes of cuts and fills to ensure proper lateral and subjacent support and drainage for the Pipeline.

Bayou Bridge shall have the right to have a right of entry and access in, to, through, on, over, under, and across the Permanent Right of Way for all purposes necessary and at all times convenient and necessary to exercise the rights granted to it.

\* \* \* \* \*

## Temporary Right of Way

Bayou Bridge is also granted a temporary right of way and servitude (the "Temporary Right of Way") needed during construction and shown on Exhibit C: …

\* \* \* \* \*

### Other Rights

> Bayou Bridge shall have the right, time to time, to clear the Permanent Right of Way, during the term thereof, of all trees, undergrowth, and other natural or manmade obstructions that, in Bayou Bridge's sole and absolute discretion, may injure or endanger the Pipeline, appliances, appurtenances, fixtures, and equipment or interfere with Bayou Bridge's access to, monitoring of, or construction, maintenance, operation, repair, relocation, and/or replacement of same. In addition, Defendants, Absentee Defendants, and Default Defendants are prohibited from altering or changing the grade of, filling, and/or flooding the Permanent Right of Way without consulting with and obtaining Approval of Bayou Bridge if such alterations or changes of grade may interfere with pipeline operations or integrity. Bayou Bridge shall have full right and authority to lease, sell, assign, transfer, and/or convey to others the Permanent Right of Way, servitude, interests, rights, and privileges sought here, in whole or in part, or to encumber the same.
>
> (b) Defendants, Absentee Defendants, and Default Defendants reserve the right to cultivate or otherwise make use of the Property for other purposes in a manner that will not interfere with the enjoyment or use of the servitude rights and the rights of way granted to Bayou Bridge.

* * * * *

(Rec. Doc. 30-7, p. 6-8)

Furthermore, to the extent Plaintiffs seek here to collaterally attack Judge Comeaux's Judgment, the *Rooker-Feldman* doctrine directs that "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).

### VII. CONCLUSION

For the reasons set forth herein, Movant prays that this Court abstain from exercising its jurisdiction over any claims for injunctive and declaratory relief by the Arrestee Plaintiffs, and otherwise dismiss all claims set forth in the Complaint. In the alternative Movant prays that this case be transferred to the United States District Court for the Western District of Louisiana.

Respectfully submitted,

*s/ Ralph R. Alexis, III*
Ralph R. Alexis, III, T.A. (2379)
Glenn B. Adams (2316)
Corey D. Moll (34245)
**PORTEOUS, HAINKEL AND JOHNSON, LLP**
704 Carondelet Street
New Orleans, LA 70130-3774
Phone: (504) 581-3838
Fax: (504) 581-4069
E-mail: ralexis@phjlaw.com
E-mail: gadams@phjlaw.com
E-mail: cmoll@phjlaw.com
*Counsel for M. Bofill Duhé, his official capacity as District Attorney for the 16th Judicial District, State of Louisiana*

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that on **September 16, 2019**, a copy of the above and foregoing pleading was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

*s/ Ralph R. Alexis, III*
Ralph R. Alexis, III