UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

———————————————————— x

| | |
|---|---|
| ANNE WHITE HAT, RAMON MEJÍA, KAREN SAVAGE, SHARON LAVIGNE, HARRY JOSEPH, KATHERINE AASLESTAD, PETER AASLESTAD, THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS, and LOUISIANA BUCKET BRIGADE | Civil Action No. 19-cv-322-JWD-EWD |
| Plaintiffs, | Judge John W. deGravelles |
| v. | Magistrate Judge Erin Wilder-Doomes |
| JEFF LANDRY, in his official capacity as Attorney General of Louisiana; BO DUHÉ, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office; RONALD J. THERIOT, in his official capacity as Sheriff of St. Martin Parish,, | |
| Defendant. | |

———————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT JEFF LANDRY'S MOTION TO DISMISS**

**Proper Party and Venue**

Plaintiffs submit this memorandum in opposition to Defendant Jeff Landry's Motion to Dismiss the claims against him on the basis of sovereign immunity. Dkt. 30-1 at 5-7. He also challenges venue. *Id*. at 7. Defendants Theriot and Duhé also move and adopt Landry's arguments on these points. Dkt. 31-1 at 2-3, dkt. 32-1 at 9-11. Plaintiffs incorporate and respond to the arguments of all defendants on these points in this brief.[1] For the reasons set out below,

---

[1] For the convenience of the Court and parties, Plaintiffs offered on October 1, 2019, to seek leave to submit a combined memorandum of no more than 30 pages as opposed to three separate responses of no more than 10 pages each as provided in Local Rule 7(g). Defendant Landry indicated he would oppose such a motion. Plaintiffs' have thus organized their responses as follows: 1) Plaintiffs address the sovereign immunity and venue arguments of Defendants in this brief; 2) Plaintiffs address the standing and *Younger* arguments raised by each of the Defendants in their response to Defendant Theriot's motion to dismiss. 3) Plaintiffs address the 12(b)(6) motions asserted by Defendants Duhé and Landry in the response to Duhé's Motion to Dismiss. To avoid duplication, Plaintiffs

Defendant Landry is a proper and necessary party to this proceeding warranting application of the *Ex Parte Young* exception, and venue is proper is in this District.

## FACTUAL BACKGROUND

At the urging of the Louisiana Mid-Continent Oil and Gas Association in response to high-profile protests opposing controversial pipeline projects, Louisiana's 2018 amendments to the law prohibiting Unauthorized Entry of a Critical Infrastructure, La. R.S. 14:61 ("the Statute"), have turned vast, unmarked stretches of this State into critical infrastructure, exposing individuals to up to five years' imprisonment for remaining on such "infrastructure" after being forbidden by "authorized persons." Dkt. 1, ¶¶ 1, 46-64. There are 125,000 miles of pipelines in Louisiana, most of which are underground and invisible, running through private and public property, waterways, wetlands, public streets, parks, and sidewalks. Dkt. 1, ¶¶ 1, 3, 5. Those pipelines, along with unknown, and unknowable, areas around them, are now included in the Statute's definition of critical infrastructure. Dkt. 1, ¶¶ 53-64.

As a result, the Statute violates the Due Process clause and First Amendment because it is vague and overbroad, violates the rights to speech, of the press, and assembly, and targets a particular viewpoint for harsher punishment. Plaintiffs include people who have been arrested under this vague law in an arbitrary and discriminatory manner, landowners whose rights have been affected, as well as racial and environmental justice advocates whose First Amendment rights to assembly, expression and of the press, are chilled by the existence of this Statute and the threat of its enforcement. Dkt. 1, ¶¶ 19-30, 85-108.

The complaint clearly demonstrates this, and as it turns out, so do Defendants' briefs which show that even officials tasked with the enforcement of this Statute are uncertain and

---

respectfully refer the Court to the Factual Background in their Opposition to Defendant Landry's Motion to Dismiss for a general, and brief, recitation of facts, some of which are repeated herein where relevant.

inconsistent among themselves as to the law's parameters. La. R.S. 14:61(A)(3) punishes "[r]emaining *upon or in the premises* of a critical infrastructure after having been forbidden…" but does not define what "premises" means when it comes to pipelines, no does it identify who is a person authorized to forbid. Dkt. 1, ¶¶ 54, 58. For Defendant Landry, "premises" means entire tracts of land where pipelines either "exist or do[] not." Dkt. 30-1 at 14. According to Landry, a person is either "present on that tract or is not." *Id.* Elsewhere in his brief, he refers to pipeline "rights-of-way." *Id*. at 11. Defendant Duhé suggests that the purpose of this Statute is the state's interest in protecting critical infrastructure. Dkt. 32-1 at 15. Defendant Landry suggests it is to protect property owners against trespassers. Dkt. 30-1 at 15.

The statute's serious vagueness and overbreadth problems manifested almost immediately when it was invoked just a matter of days after it went into effect by a pipeline company that itself was knowingly trespassing and illegally constructing on property where protesters and a journalist were arrested and charged under the statute. Dkt. 1,8-12, 65-84; dkt. 30-1, p. 3; dkt. 30-15. The trespassing company served as the authorized person directing law enforcement to remove alleged trespassers. *Id.* The fact that law enforcement was taking direction from a trespassing pipeline company and arresting protesters and a journalist and not company employees demonstrates arbitrary and discriminatory enforcement.

## LAW AND ARGUMENT

### I. The Attorney General Is a Proper Party Under *Ex Parte Young*.

Defendant Landry, by the authority of the Louisiana Constitution, is the chief legal officer of the state. His office is in Baton Rouge. Yet, despite federal decisions on point and his own public pronouncements about this case and others, he now seeks to be relieved of the responsibility of defending the constitutionality of this statewide criminal law. He suggests that

others should defend the Louisiana law, that his office be dismissed from the case, and that it should be reassigned to another federal district court so it does not have to defend the Statute in Baton Rouge. "[O]fficial-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, n. 10 (1989) citing *inter alia Ex Parte Young*, 209 U.S. 123 (1908). In determining whether the *Ex Parte Young* exception applies in a federal suit against a state official, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *K.P. v. LeBlanc,* 627 F.3d 115, 124 (5th Cir. 2010) citing *Ex Parte Young*, *supra*. It is a "straightforward inquiry" into whether a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645, (2002).

      The Attorney General bears a clear and sufficient connection to the enforcement of the Statute being challenged in this case. Plaintiffs seek declaratory and injunctive relief from an unconstitutional criminal law that creates a new felony punishable by up to five years imprisonment for merely being present "upon or in the premises of" a pipeline – where exactly is unclear in the Statute – without permission. Dkt. 1 at ¶¶ 1-2, 4-6, 14-18, 46-137. The Attorney General's connection with the enforcement of the Statute "arises out of the general law," which both vests him with authority to prosecute criminal cases directly in some circumstances and supervisory authority over district attorneys who wield that authority. Dkt. 1 at ¶30.

      The Louisiana Constitution of 1974 mandates that the Attorney General is the "chief legal officer of the state," with authority to advise and assist in the prosecution of any criminal case at the request of district attorneys in the state, and to institute, prosecute, or intervene in any

criminal action or proceeding, or supersede any attorney representing the state in any civil or criminal action, for cause and with judicial authorization. La. Const. Art. IV, Sec. 8. The Louisiana Code of Criminal Procedure provides that the "attorney general *shall* exercise supervision over all district attorneys in the state. La.C.Cr.P. Art. 62(A) (emphasis added); Dkt. 1, ¶ 30.  In turn, and "[s]ubject to the supervision of the attorney general," district attorneys have "entire charge and control of every criminal prosecution instituted or pending in [their] district, and determine[] whom, when, and how they shall prosecute." La.C.Cr. P. Art. 61.[2]

Contrary to the position he has taken in this motion to dismiss where he seems to suggest these laws do mean what they say and disavows actual authority over or connection to enforcement of the criminal law of this state, Landry's office initially declared that it would "vigorously defend" the Statute because "[o]ur state has an obvious and compelling reason to protect vital infrastructure from criminal trespass, damage, or possible attack." [3]

In other federal litigation which challenged the constitutionality of a Louisiana statute, Defendant Landry intervened in the matter by asserting that as "the Chief Legal Officer of the State of Louisiana" he is in a "special position to defend the constitutionality of state laws" and in fact has a "*duty*" to do so that is "well established in [Louisiana's] state constitution and law." *See* Spees Decl., Ex. C (Excerpts from Attorney General's Ex Parte Consent Motion to Intervene

---

[2] While the Attorney General's official website currently notifies the public that, "[a]s the chief law enforcement officer of the State," he may render opinions to "District attorneys on matters relating to state law," an earlier version of the same web page from January 2019, also advised that "the Attorney General will consult with and advise the district attorneys in matters relating to the duties of their offices." Spees Decl., Ex. A and B.
In addition to the Attorney General's supervisory authority over district attorneys, any party challenging the constitutionality of a statute must provide notice to the Attorney General who then must be afforded an opportunity to be heard in the proceeding. *See, e.g.,* La. R.S. 13:4448, La.C.C.P. Art. 1880.

[3] Collin Eaton, *Pipeline opponents challenge Louisiana law targeting protesters,* Reuters, May 22, 2019, *available at* https://www.reuters.com/article/us-louisiana-pipeline-lawsuit/pipeline-opponents-challenge-louisiana-law-targeting-protesters-idUSKCN1SS2I0?feedType=RSS&feedName=environmentNews; *The Latest: Attorney General Backs Pipeline Trespass Law,* Associated Press, May 22, 2019, *available at* https://www.usnews.com/news/best-states/louisiana/articles/2019-05-22/the-latest-attorney-general-backs-pipeline-trespass-law. This statement is admissible under Fed. R. Evid. 801(d)(2) as a party-opponent admission.

5

in *Doe v. Lombard*, No. 16-14876, para. 4, (La. E.D. Nov. 1, 2016) (emphasis added)). Moreover, he claimed that an adjudication of the act challenged in that matter "without the Attorney General's presence impairs and impedes the Attorney General's ability to protect the State's interest in upholding the constitutionality of state laws." *Id.* at ¶. 6.

In this case, while some Plaintiffs own property and three others were arrested under the Statute in St. Martin Parish, the remaining plaintiffs reside in Orleans and St. James parishes where their rights to assembly, expression and advocacy on behalf of communities disproportionately impacted by pipelines and toxic industries are chilled by the existence of the Statute and the threat of its enforcement. Dkt. 1, ¶¶ 19-29, 65-108. The Attorney General has supervisory authority over the district attorneys in each of these parishes as well as the ability to initiate criminal prosecutions, for cause and with judicial authorization.[4]

He thus bears a clear connection to the enforcement of the Statute that is more than sufficient to meet the requirements of *Ex Parte Young*.[5]

## II. Plaintiffs' Chosen Venue Is Proper and Should Be Maintained.

For venue purposes, the Attorney General is considered to reside where he performs his official duties. *Fla. Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981).[6] The Attorney General resides in this district in his official capacity, *see* dkt. 30-1 at 7, and venue here is proper pursuant to 28 U.S.C. §1391(b)(1).

---

[5] This is in contrast, for example, to the Attorney General's inability to enforce or enjoin enforcement of the law challenged in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) where the challenged act created a private right of action for patients against abortion providers. Here, the Attorney General can prosecute violations of the law under some circumstances and has supervisory authority over district attorneys in the state, who are also tasked with prosecuting alleged violations of the statute.

[6] The Attorney General's sworn statements about his personal place of residence are irrelevant. *See Taylor v. White*, 132 F.R.D. 636, 640 (E.D. Pa. 1990).

6

Venue is also proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. In particular, the Louisiana Legislature passed the Statute challenged as unconstitutional in this district. Dkt. 1, ¶¶ 46-54. This is considered so significant and "substantial," that the Louisiana Supreme Court has *required* that cases challenging the constitutionality of a statute and seeking to enjoin its enforcement be brought in East Baton Rouge Parish rather than where the effects of it were felt. *See Devillier v. State,* 590 So.2d 1184 (La. 1991). In *Devillier,* even though the events which gave rise to a fine assessed by a state agency occurred in St. Martin Parish, the suit was "not based on a cause of action which arose" there. *Id.* Rather, the claim was based on the constitutionality of the statute under which the fine was assessed; therefore any action to prohibit the state agency from enforcing it must be brought in East Baton Rouge Parish. *Id.*

Federal courts have taken a similar approach, focusing on where the decision-making process occurred to determine where the claims arose. *See e.g., Nat'l Ass'n of Home Builders v. U.S. E.P.A.*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009); *Greater Yellowstone Coalition v. Bosworth,* 180 F. Supp. 2d 124, 128-130 (D.D.C. 2001) (refusing venue transfer as claims focused on interpretation of federal statutes and decision-making occurred in the plaintiff's chosen district, the District of Columbia, and warning that Section §1404(a) should not be used "as a means of forum shopping"); *Akiachak Native Cmty. v. Dep't of Interior,* 502 F. Supp. 2d 64, 67-68 (D.D.C. 2007) (denying transfer where "national rulemaking process [the Department of the Interior] engaged in when formulating the regulation at issue took place in the district, and public discussions of the proposed regulation took place" in plaintiffs' chosen venue).

Plaintiffs' claims for the unconstitutionality of the 2018 Amendments to the Statute arose in East Baton Rouge Parish where the legislation was proposed, debated, passed, and enacted, and venue is proper in this district.

Defendant Duhé requests that, even if venue here is proper, the matter be transferred to the U.S. District Court for the Western District of Louisiana, pursuant to 28 U.SC. § 1404(a), which allows transfer to a district where the matter might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." Dkt. 32-1 at 9-10. However, the balance of these considerations weighs far more in favor of Plaintiff's chosen venue, which is accorded substantial deference. *See, e.g., Coons v. Am. Horse Show Ass'n, Inc.,* 533 F. Supp. 398, 400 (S.D. Tex. 1982) (collecting cases) ("Unless the balance of convenience or burden is strongly in favor of the movant, the plaintiff's choice of forum should not be disturbed."). Defendants bear the burden on motion to transfer venue and must "clearly demonstrate" that a transfer is for the convenience of parties and witnesses and in the interest of justice. *See In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

To help guide venue determinations as to "convenience" and "interest of justice," the Fifth Circuit has adopted a set of non-exhaustive private and public interest factors. *Id.* The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

Defendant Duhé points out that Plaintiffs do not reside in this district. Dkt. 32-1 at 10. However, in addition to the fact that Plaintiffs' chosen venue is where their claims arose and where one of the Defendants resides, this venue is closer and far more convenient and accessible to them than the one proposed by Defendants. The in-state Plaintiffs reside in Orleans and St. James parishes and the Middle District is much closer than the Western District, which is almost twice the distance.[7]

Plaintiffs and any witnesses from Orleans and St. James parishes would be far more inconvenienced by the change of venue than Defendants Theriot and Duhé are by maintaining it.

In terms of the public interest factors, Defendants have offered no facts, figures, or theories at all as to the first, third, or fourth factors. The only one Defendants marginally implicate is the second factor, i.e., "the local interest in having localized interests decided at home." *Id*. That factor too weighs in favor of venue in this district because the claim is not a local one with localized interests. Any determination on the merits of this matter will have a statewide effect, far beyond the confines of St. Martin Parish. *See, e.g., Greater Yellowstone Coalition v. Bosworth,* 180 F. Supp. 2d at 129 (noting "national significance" of the case) and *Nat'l Ass'n of Home Builders v. U.S. E.P.A*., 675 F. Supp. 2d at 178 (affirming denial of transfer in part because the determination carried significance beyond Arizona).

---

[7] The Court can likely take judicial notice of the distance between parishes; however, for ease of reference, Plaintiffs provide google maps showing: The shortest route for a witness from Plaintiff Louisiana Bucket Brigade to travel from New Orleans to this courthouse is approximately 79 miles, or approximately 1 hour, 17 minutes. The distance to the courthouse in the Lafayette Division of the Western District is 133 miles, or approximately 2 hours, eight minutes away.[7] Spees Decl., Ex. D. For Plaintiff Pastor Harry Joseph, the shortest route from his church in St. James to this courthouse is approximately 44.5 miles, or 51 minutes. The shortest route from St. James to the courthouse at the Lafayette Division is approximately 98.8 miles or 1 hour and 42 minutes. *Id*., Ex. E. For defendants Theriot and Duhé, the shortest route to the Middle District courthouse is 59.8 miles, or 1 hour, seven minutes, versus 14.4 miles, or 23 minutes to the Western District. *Id.,* Ex. F.

Defendants have not met their burden of clearly demonstrating that a transfer to the Western District would be more convenient for the parties and witnesses, or in the interests of justice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Attorney General from this matter and challenges to venue should be denied.

Date: October 7, 2019                                    Respectfully submitted,

                                                          s/Pamela C. Spees

| | |
|---|---|
| WILLIAM QUIGLEY | PAMELA C. SPEES |
| La. Bar Roll No. 7769 | La. Bar Roll No. 29679 |
| Professor of Law | ASTHA SHARMA POKHAREL |
| Loyola University College of Law | (Admitted *Pro Hac Vice*) |
| 7214 St. Charles Avenue | Center for Constitutional Rights |
| New Orleans, LA 70118 | 666 Broadway, 7th Floor |
| Tel. (504) 710-3074 | New York, NY 10012 |
| Fax (504) 861-5440 | Tel and Fax: (212) 614-6431 |
| quigley77@gmail.com | pspees@ccrjustice.org |
| | asharmapokharel@ccrjustice.org |

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, a copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

                                                              s/Pamela C. Spees
                                                              Pamela C. Spees