# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

---

| | |
|---|---|
| ANNE WHITE HAT, RAMON MEJÍA, KAREN SAVAGE, SHARON LAVIGNE, HARRY JOSEPH, KATHERINE AASLESTAD, PETER AASLESTAD, THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS, and LOUISIANA BUCKET BRIGADE | Civil Action No. 19-cv-322-JWD-EWD |
| Plaintiffs, | Judge John W. deGravelles |
| v. | Magistrate Judge Erin Wilder-Doomes |
| JEFF LANDRY, in his official capacity as Attorney General of Louisiana; M. BOFILL DUHÉ, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office; RONALD J. THERIOT, in his official capacity as Sheriff of St. Martin Parish, | |
| Defendant. | |

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT M. BOFILL DUHÉ'S MOTION TO DISMISS
## UNDER FED. R. CIV. PRO. 12(b)(6)

Plaintiffs submit this memorandum in opposition to Defendant Bofill Duhé's motion to dismiss under Fed. R. Civ. Pro. 12(b)(6). Dkt. 32-1 at 16-18. Defendant Jeff Landry also moves to dismiss Counts I (void for vagueness) and III (viewpoint discrimination) under 12(b)(6). Dkt. 30-1 at 13-17. Plaintiffs incorporate and respond to the arguments of both defendants on these points in this brief.[1] Defendants have not moved to dismiss Counts II (First Amendment), IV

---

[1] For the convenience of the Court and parties, Plaintiffs offered on October 1, 2019, to seek leave to submit a combined memorandum of no more than 30 pages as opposed to three separate responses of no more than 10 pages each as provided in Local Rule 7(g). Defendant Landry's office indicated they would oppose the motion. Plaintiffs have thus organized their responses as follows: 1) Plaintiff's address the sovereign immunity and venue arguments of defendants in their response to Defendant Landry's Motion to Dismiss; 2) Plaintiffs address the 12(b)(6) motions by Defendants Duhé and Landry in this brief. Plaintiffs address the standing and *Younger* arguments made by all Defendants in the response to Defendant Theriot's motion to dismiss. To avoid duplication,

1

(Overbreadth) and V (as applied) under 12(b)(6). For the reasons set out below, Plaintiffs more than adequately set forth sufficient facts to state claims upon which relief may be granted.

## LAW AND ARGUMENT

Plaintiffs' provide a thorough, detailed, and plausible accounting of the facts surrounding the enactment of the Critical Infrastructure Statute ("the Statute"), its facial invalidity, its unconstitutional application to three of the plaintiffs, the chilling effect on all of the plaintiffs, as well as their claims and entitlement to relief. "[H]eightened fact pleading of specifics" is not required, "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007). When considering a motion to dismiss under Rule 12(b)(6), courts must "accept well-pled factual allegations as true." *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 153 (5th Cir. 2010). Any "ambiguities or doubts regarding sufficiency of the claim" are to be resolved in favor of the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993).

### I. Plaintiffs Adequately State a Claim that the Statute Is Void for Vagueness.

A law is unconstitutionally vague when it "(1) fails to apprise persons of ordinary intelligence of the prohibited conduct, or (2) encourages arbitrary and discriminatory enforcement." *City of Chicago v. Morales,* 527 U.S. 41, 90 (1999); *see also, Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The "vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone… than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford,* 408 U.S.

---

Plaintiffs respectfully refer the Court to the Factual Background in their Opposition to Defendant Landry's Motion to Dismiss for a general, and brief, recitation of facts, some of which are repeated herein where relevant.

104, 109 (1972) (internal citations and quotations omitted); *See also, Kolender,* 461 U.S. at 358 (noting concern that identification requirement in law governing stops by police had "potential for arbitrarily suppressing First Amendment liberties").

La. R.S. 14:61, as amended, does all of these things. The facts in this complaint, and the various inconsistent interpretations of the law in Defendants' briefs, demonstrate the Statute being challenged is vague and overbroad, has been unconstitutionally applied, and even officials tasked with the enforcement of this law are uncertain and inconsistent as to the law's parameters.

**A. The Law Does Not Provide Adequate Notice of Prohibited Conduct.**

The law turns vast, unmarked stretches of this State into critical infrastructure and exposes individuals to up to five years' imprisonment for remaining on such infrastructure after being forbidden by "authorized persons." In particular, La. R.S. 14:61(A)(3) punishes "[r]emaining *upon or in the premises* of a critical infrastructure after having been forbidden to do so, either orally or in writing, by any owner, lessee, or custodian of the property or by any other authorized person" but does not define what "premises" means when it comes to pipelines or identify who constitutes an "authorized person." La. R.S. 14:61(A)(3); Dkt. 1, ¶¶ 54, 56-63.

There are over 125,000 miles of pipelines in this state, much of which are underground and invisible, often not clearly marked, running through private and public land, water ways, wetlands, under public streets, sidewalks, parks, and other public spaces. Dkt. 1, ¶¶ 4, 5 (including pipeline map), 33. As a result, the phrase "upon or in the premises of" becomes vague and incomprehensible when applied to pipelines and therefore does not provide adequate notice to those who could be subject to the law and exposed to up to five years' imprisonment. *Lanzetta v. N.J.*, 306 U.S. 451, 453 (1939) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."). Every other type of critical infrastructure

encompassed by the statute consists of an identifiable, above-ground facility that is often enclosed by a "physical barrier" and posted with notices to the public. Dkt.1, ¶¶ 3, 54. La. R.S. 14:61(A)(1) and (B)(1). The law also does not define who constitutes an "authorized person" for purposes of revoking permission to remain present. Dkt. ¶¶ 54, 56, 59, 60.

Defendant Landry's brief is particularly alarming evidence of the Statute's vagueness and vulnerability to wildly expansive interpretations – particularly coming from an official tasked with enforcement and supervising others who enforce the law. For Landry, "premises" becomes a "tract of land" where a pipeline either "exists, or does not" and he suggests that this fact is ascertainable (though he does not say how nor point to any provision in the statute that offers guidance).[2] Dkt. 30-1, at 14; *See also*, Dkt. 1, ¶¶ 58, 63. Further, he suggests "a person" is either "present on that tract or is not" and has "been forbidden from remaining or not." *Id*.

Five of the landowners in this case co-own a "tract" of land that is 38 acres, which now has the Bayou Bridge Pipeline running through a small portion of it. Dkt. 1, ¶¶ 23, 24, 66, 67; dkt. 30-7 at ¶2 (Judgment of Expropriation, property description). Defendant Landry believes all 38 acres are to be considered "premises" for purposes of this law. If his assessment is given credence, then "premises" for the Bayou Bridge Pipeline, as an example, would include the entirety of each tract of land through which the 163-mile pipeline runs. Dkt. 1, ¶ 36. When applied to the 125,000 miles of pipeline in this state, his position would convert even larger swathes of this state into critical infrastructure. With respect to pipelines running through private property, Defendant Landry's position underscores the concerns Landowner Plaintiffs have

---

[2] Elsewhere when discussing standing, Defendant Landry references the pipeline company's "right to use the right-of-way without disturbance." Dkt. 30-1 at 11. Landry and Duhé also suggest, without explaining how, that this suit may be a collateral attack on the expropriation judgment relating to the property co-owned by five of the Plaintiffs in this matter. Dkt. 30-1 at 11, dkt. 32-1 at 18. This again demonstrates the confusion and uncertainty about this law as there is simply no way that a judgment declaring La. R.S. 14:61 unconstitutional would have any bearing on that expropriation judgment.

about the law's scope, its effects on their rights of ownership and when and where they or their guests may be charged with felonies for remaining after being forbidden. Dkt. 1, ¶¶ 60, 96.

Defendant Duhé's brief does not address Section (A)(3) of the Statute at all. Instead, he merely asserts in conclusory fashion that the "statute is not vague" and then points to the Section (A)(1), which prohibits unauthorized entry into critical infrastructure that is completely enclosed by a "physical barrier." Dkt. 32-1 at 15, *see also,* La. R.S. 14:61(A)(1).

### B. The Law Encourages Arbitrary and Discriminatory Enforcement and Has Already Been Arbitrarily and Discriminatorily Enforced.

The Supreme Court has held that the "requirement that a legislature establish minimal guidelines to govern law enforcement" is even more important than actual notice of prohibited conduct. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (striking down law requiring "credible and reliable" forms of identification because it vested police with too much discretion and "entrusts lawmaking to the moment-to-moment judgment of the policeman.") (internal quotations omitted). Where the legislature "fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* citing *Smith v. Goguen,* 415 U.S. 566 (1974). *See also, Morales*, 527 U.S. at 60 (striking down as facially invalid a loitering statute in part because it lacked minimal guidelines to govern law enforcement).

As in *Kolender* and *Morales,* there are no guidelines in La. R.S. 14:61 to govern law enforcement when it comes to the provision prohibiting individuals from remaining "upon or in the premises of a critical infrastructure" after being forbidden, or even concerning who is authorized to forbid. Dkt. ¶¶ 56-63. That individuals may receive a "command forbidding [them] from remaining on the premises of a pipeline," does not ameliorate the vagueness problems, as Defendant Landry suggests. Dkt. 30-1 at 14. *See Wright v. State of Ga.,* 373 U.S. 284, 293

5

(1963) (warning not sufficient when a generally worded statute, construed to punish conduct which cannot be constitutionally punished, is unconstitutionally vague). *See also Morales,* 527 U.S. at 59-60. Nor do the purported carveouts at La. R.S. 14:61(D) constitute minimal guidelines for law enforcement, particularly given the statute's vagueness as to the area covered by the law, because they merely restate "already-existing constitutional limits on any government activity." *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1207 (D. Ariz. 2013). *See also*, *CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985) (such clauses "cannot substantively operate to save an otherwise invalid statute, since [they are] a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments").

The statute's problems with facial vagueness are amply illustrated by the fact that it has already been arbitrarily and discriminatorily enforced. Plaintiffs White Hat, Savage, and Mejía were arrested for violating the law where there was no legally cognizable critical infrastructure – so the law should not have been invoked in the first place. Dkt. 1, ¶¶ 69-93. Bayou Bridge Pipeline, LLC, was present on the property illegally at the time of the arrests, as was confirmed in the expropriation proceeding. *Id.* ¶¶ 12, 69-84; *See*, dkt. 30-7 at 3 (Final Judgment). Even though it was trespassing, the company was contacting law enforcement to have protesters and others arrested. Dkt. 30-1 at 3; dkt. 30-15 (Authorization For Removal of Trespassers).

The warrant affidavit submitted by Defendant Landry with his Motion to Dismiss, if taken as true, further demonstrates how the law was arbitrarily and discriminatorily enforced against Plaintiff White Hat. Dkt. 30-9.[3] Even assuming *arguendo* that the pipeline company was

---

[3] As the Attorney General notes, dkt, 30-1 at n 1, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000). In doing so, "defendants merely assist the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.*

6

there legally and that a form of critical infrastructure existed at the time, the warrant affidavit attests that White Hat exited the purported pipeline right-of-way after being advised to do so and then was arrested two weeks later. *Id.* at 5; dkt. 1, ¶¶ 75, 87. White Hat would not have been in violation of La. R.S. 14:61(A)(3) which prohibits remaining after being forbidden. The officer was essentially charging her under La. R.S. 14:61(A)(1), which would not apply to the situation because it is limited to critical infrastructure with a "physical barrier." The same analysis would apply to journalist Plaintiff Savage's arrest. Dkt. 30-10; dkt. 1, ¶¶ 85-92.

## II. The Complaint Adequately States a Claim That the Statute Is Viewpoint Discriminatory Because It Was Adopted to Silence Opposition to Pipelines.

Defendant Landry wrongly suggests that a statute cannot be content-based or viewpoint discriminatory if it makes no reference on its face to the content of speech proscribed. Dkt. 30-1 at 14-15.[4] To the contrary, the Supreme Court has recognized that there are two steps in determining whether a statute is content based. First, a court must determine whether the law "on its face draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). If it does not, then the court must determine whether the law "cannot be justified without reference to the content of the regulated speech" or whether it was "adopted by the government because of disagreement with the message the speech conveys." *Id.*[5] In either case, the challenged law is deemed to be content based.

### A. The Legislation Is Content-Based And Developed to Silence Pipeline Protests.

First, the Statute is content-based on its face because it regulates expression. La. R.S. 14:61(D)(1) addresses assembly, petitioning, picketing and demonstrations "upon or in the

---

[4] Defendant Theriot does not argue that Plaintiffs have failed to state a claim. Defendant Duhé's brief is unclear as to which of Plaintiffs' claims he is arguing fail. Dkt. 32-1 at 16-18.
[5] Defendant Landry cites *United States v. O'Brien* to argue that a law should not be invalidated based on what "Congressmen said about it." Dkt. 30-1 at 15. But since *O'Brien*, the Supreme Court has held that the purpose of a statute is relevant to whether it is content-based. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015).

7

premises of" a pipeline if done for 'the redress of grievances," or to express ideas "regarding legitimate matters of public interest… including labor dispute[s]." Anyone enforcing the statute must first determine whether the message conveyed by those assembled fits these categories.

Additionally, and even if the Statute is not found to be content-based on its face, Plaintiffs have alleged that it was adopted to silence opposition to pipelines, and is therefore viewpoint discriminatory. Dkt. 1, ¶¶ 34-55. The Statute is part of a series of critical infrastructure legislation across the country targeting peaceful protests against pipelines. *Id.* The sponsor of a similar law in Oklahoma admitted that it was in response to the Dakota Access Pipeline protests. *Id*. at ¶42. In Louisiana, the Statute was drafted by the Louisiana Mid-Continental Oil and Gas Association, which represents "all aspects of the oil and gas industry including exploration, production, mid-stream activities, pipeline, refining and marketing." *Id.* at ¶47. The drafter admitted that the Statute followed Oklahoma's footsteps. *Id.* at ¶48. Oil and gas industry associations view the Statute as aimed at "anti-pipeline protestors across the country who have opposed the permitted construction of energy infrastructure projects." *Id*. at ¶¶44-45.

Despite a legislative history that reveals the Statute's discriminatory purpose, Defendants argue that there is a viewpoint neutral purpose for the statute: "to protect property owners from trespassers," and "protecting critical infrastructure." Dkt. 30-1 at 15 (Landry);[6] dkt. 32-1 at 15 (Duhé). But La. R.S. 14:63, the general criminal trespass statute, already serves that purpose.[7] This Statute only imposes harsher criminal penalties and in additional fora, such as public sidewalks, parks, or waterways that may be "upon or in the premises of" a pipeline. La. R.S. 14:61(A)(3), (B)(1), (B)(3). Citing *Grayned v. City of Rockford,* Defendant Landry argues that

---

[6] Defendant Landry's suggestion is ironic given the lack of protection afforded to the small landowner Plaintiffs against the trespass of the pipeline company.
[7] La. R.S. 14:61.1, covering criminal damage to a critical infrastructure, also serves this purpose.

8

"expressive activity may be prohibited" in a traditional public forum "if it… involves substantial disorder or invasion of the rights of others." Dkt. 30-1 at 16. But unlike the anti-noise ordinance in *Grayned,* which prohibited willfully making or assisting "in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of… [a] school session or class thereof," 408 U.S. 104, 108 (1972), this Statute does not require disturbing the peace, intent to cause damage or harm, or commit any act of violence or criminal offense.

### B. The Statute Vests Unbridled Discretion In "Authorized Persons" To Restrict Access to And Expression In Public and Non-Public Fora.

The Supreme Court has recognized that "the danger of content and viewpoint censorship… is at its zenith when the determination of who may speak and who may not is left to an official's unbridled discretion." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 751 (1988). *See also, Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Cox v. State of La.*, 379 U.S. 536, 557–58 (1965). If the challenged law vests an official with unbridled discretion, and has a "close enough nexus to expression, or to conduct commonly associated with expression," then it is viewpoint discriminatory. *City of Lakewood*, 486 U.S. at 759.

As discussed above with regard to vagueness, the Statute vests unbridled discretion in government authorities to determine who can have access to certain public and non-public fora and what constitutes a "legitimate matter of public interest." The Statute allows an undefined "authorized person" to decide who can remain on land or water that may be "upon or in the premises" of "pipelines… or any site where the construction or improvement of any [pipeline] is occurring," and what kind of expression is allowed. La. R.S. 14:61(A)(3), (B)(1). This could be a public park, sidewalk, waterway, or private property. Additionally, the Statute has a clear nexus to expression or conduct commonly associated with expression as it allows "authorized persons" to arbitrarily forbid otherwise lawful assemblies, demonstrations or meetings in such fora based

9

on the viewpoint expressed. *See, e.g., Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. at 131 (unbridled discretion doctrine applied to invalidate ordinance regulating "parades, assemblies, demonstrations…").[8] The carveout in La. R.S. 16:41(D)(1) "cannot substantively operate to save an otherwise invalid statute." *CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985). Additionally, it only protects expression on matters of "legitimate public interest" with no guidance on what that is, and the Statute has already been applied to proscribe protected expression and conduct in an arbitrary and discriminatory manner.

## CONCLUSION

For the foregoing reasons, Defendants Motions to Dismiss pursuant to Fed R. Civ. P. 12(b)(6) should be denied.

Date: October 7, 2019                    Respectfully submitted,

                                         __s/Pamela C. Spees_____
WILLIAM QUIGLEY                          PAMELA C. SPEES
La. Bar Roll No. 7769                    La. Bar Roll No. 29679
Professor of Law                         ASTHA SHARMA POKHAREL
Loyola University College of Law         (Admitted *Pro Hac Vice*)
7214 St. Charles Avenue                  Center for Constitutional Rights
New Orleans, LA 70118                    666 Broadway, 7th Floor
Tel. (504) 710-3074                      New York, NY 10012
Fax (504) 861-5440                       Tel and Fax: (212) 614-6431
quigley77@gmail.com                      pspees@ccrjustice.org
                                         asharmapokharel@ccrjustice.org

---

[8] This is unlike *Moore v. Brown*, where the Fifth Circuit held that a rule in a public park which prohibited structures that were bigger than 4x4 feet, but did not otherwise restrict access or assembly in that public forum or draw distinctions based on the content of the expression, did not have a close nexus to expression. 868 F.3d 398, 405 (5th Cir. 2017).

CERTIFICATE OF SERVICE

      I hereby certify that on October 7, 2019, a copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

                                                  <u>s/Pamela C. Spees</u>
                                                  Pamela C. Spees